IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 126,<br><br>*Plaintiff*,<br><br>v.<br><br>AMERICAN LIGHTING AND SIGNALIZATION, LLC,<br><br>*Defendant*. | Civil Action<br><br>No. 22-cv-4446 |

MEMORANDUM OPINION

GOLDBERG, J.                                                                                                                    August 16, 2023

This case involves a dispute between a labor organization and a contractor for the City of Philadelphia over wages paid to certain electrical workers hired by the Defendant, American Lighting and Signalization, LLC. Plaintiff brought this action in state court to recover unpaid wages, after which Defendant removed the case to this Court and filed a motion to dismiss. Plaintiff has cross-moved to remand the case to state court.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff International Brotherhood of Electrical Works, Local Union No. 126 is a labor organization that represents electrical workers. Plaintiff is a party to a Collective Bargaining Agreement (CBA) with Defendant American Lighting and Signalization, LLC. When Defendant contracted with the City of Philadelphia to repair city streetlights, it hired several of Plaintiff's members to perform the work. (Compl. ¶¶ 3–5, 8, 13–14.)

1

On November 7, 2022, Plaintiff brought this case in the Court of Common Pleas of Philadelphia County under the Philadelphia Wage Theft Ordinance to recover unpaid wages allegedly owed to its members. See Phila. Code. § 9-4305. Plaintiff claims that Defendant committed wage theft by paying its members wage rates lower than those required by the Pennsylvania Prevailing Wage Act, 43 Pa. Cons. Stat. § 165-5. Specifically, Plaintiff alleges that Defendant improperly paid Plaintiff's members according to the job classifications "Maintenance/Street Light Tech," and "Maintenance/Night Repairmen." Plaintiff urges that that a higher "Lineman" classification rate was appropriate because the work performed was lineman work under the Prevailing Wage Act. (Compl. ¶¶ 15–17, 20.) Plaintiff points to an "Invitation to Bid" issued by the City of Philadelphia for this project that included a "Lineman" classification but did not include the classifications Defendant used. (Compl. Ex. B at 33.)

Defendant removed the case to this Court, averring that federal jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff's claim is completely preempted by section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. (Notice of Removal ¶¶ 4–5.) Defendant contends that the parties' CBA defines the job classifications for the project, and, consequently, determination of Plaintiff's claim that its members were improperly paid necessitates interpretation of the CBA. (Id. ¶¶ 11–12.) Therefore, Defendant argues, Plaintiff's claim falls within the grant of federal jurisdiction contained in § 301 for labor contract suits. (Id. ¶¶ 2–4.) Plaintiff responds that its claim is not completely preempted as it rests only on state law—the Wage Theft Ordinance and the Prevailing Wage Act. (Pl.'s Mem. In Support of Pl.'s Mot. To Remand 4.)

Defendant has moved to dismiss Plaintiff's claim and Plaintiff has cross-moved to remand this case to state court for lack of jurisdiction.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action filed in a state court if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). A defendant bears the burden of establishing that removal jurisdiction is proper. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). Once an action is removed, a plaintiff may challenge removal by moving to remand the case to state court. 28 U.S.C. § 1447(c). Remand to the state court is appropriate for "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure." PAS v. Travelers Ins. Co., 7 F.3d 349, 352 (3d Cir. 1993). Remand is mandatory and can occur at any time during the litigation if the court determines that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "The defendant's right to remove is to be determined according to the plaintiffs' pleading at the time of the petition for removal, and it is the defendant's burden to show the existence of federal jurisdiction." Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985). Because proceeding in a case without valid subject matter jurisdiction would make any decree in the case void, removal statutes are strictly construed, and all doubts are resolved in favor of remand. Id.

## III.  DISCUSSION

A federal district court has original jurisdiction over any civil action which arises under the laws of the United States. 28 U.S.C. § 1331. "A cause of action does not typically 'arise under' federal law unless a federal question appears on the face of a well-pleaded complaint." N.J. Carpenters v. Tishman Constr. Corp., 760 F.3d 297, 302 (3d Cir. 2014) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 8 (1983)). For example, "a federal defense is insufficient to confer federal jurisdiction" because it would not establish that the plaintiff's cause of action arises under federal law. Id.; Franchise Tax Bd., 463 U.S. at 10. However, a "narrow exception" known as "complete preemption" allows for original jurisdiction where no federal question appears on the face of the complaint. N.J. Carpenters, 760 F.3d at 302. This exception comes into play where Congress

3

expressed an intent "to completely pre-empt a particular area of law such that any claim that falls within this area is necessarily federal in character." Id.

The complete preemption doctrine applies to § 301 of the LMRA, which allows suits between labor organizations and employers over labor contract violations to be brought in federal court. 29 U.S.C. § 185; N.J. Carpenters, 760 F.3d at 305. A state cause of action is completely preempted by § 301 if its resolution is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." Id. (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1988)). Here, Defendant contends that Plaintiff's state law claim is completely preempted by § 301 of the LMRA because the parties' CBA is relevant to determining the appropriate job classifications of Plaintiff's members.

### A.     The Pennsylvania Prevailing Wage Act

To determine whether Plaintiff's state-law claim is completely preempted by § 301, it is necessary to examine the relationship between the Pennsylvania Prevailing Wage Act and the CBA. See N.J. Carpenters, 760 F.3d at 300–01 (discussing New Jersey Prevailing Wage Act in relation to the collective bargaining agreement in that case). Plaintiff claims that Defendant committed wage theft under the Philadelphia Wage Theft Ordinance by violating the Pennsylvania Prevailing Wage Act. "Wage theft" under the Philadelphia Wage Theft Ordinance includes violation of "any . . . federal or state law regulating the payment of wages, where the work is performed in Philadelphia." Phila. Code § 9-4301. Plaintiff asserts that Defendant failed to adhere to the requirement of the Pennsylvania Prevailing Wage Act that "[n]ot less than the prevailing minimum wages . . . shall be paid to all workmen employed on public work." 43 Pa. Cons. Stat. § 165-5.

In determining the applicable "minimum prevailing wages," Pennsylvania uses an administrative process in which every "public body" proposing a contract for a public works project must seek a determination from the Pennsylvania Secretary of Labor and Industry ("the Secretary")

of the prevailing wage rates to be paid by the contractor on that project. § 165-4; 34 Pa. Code § 9.104. The Secretary, in consultation with the Prevailing Wage Advisory Board, determines "the general prevailing minimum wage rate in the locality in which the public work is to be performed for each craft or classification of all workmen needed to perform public work contracts during the anticipated term thereof." 43 Pa. Cons. Stat. § 165-7. The Act defines "classification," somewhat circularly, as "[s]pecific classifications of jobs which are performed within a 'craft.'" 34 Pa. Code § 9.102. A "craft" refers to "[s]pecial skills and trades which are recognized as such by custom and usage in the building and construction industry." Id. For the purpose of determining prevailing wage rates, "the Secretary may ascertain and consider the wage rates and employee benefits established by collective bargaining agreements." 34 Pa. Code § 9.105(a). The wage rates determined by the Secretary must be published in the bid invitation and incorporated into the contract for that project. 43 Pa. Cons. Stat. § 165-4.

The Prevailing Wage Act provides a cause of action for workers "paid less than the rates specified in the contract." 43 Pa. Cons. Stat. § 165-13. When a challenge arises as to whether a worker has been paid according to the correct classification, evidence of custom and usage in the industry is considered. See, e.g., Allied Mech. & Elec., Inc. v. Pa. Prevailing Wage Appeals Bd., 923 A.2d 1220, 1225 (Pa. Commw. Ct. 2007); R.L. Insulation Co., Inc. v. Prevailing Wage Appeals Bd., 923 A.2d 550, 555–56 (Pa. Commw. Ct. 2007).

B. **The Labor Management Relations Act**

Section 301 of the Labor Management Relations Act of 1947 (LMRA) provides federal subject-matter jurisdiction for "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185; N.J. Carpenters, 760 F.3d at 305. This provision has been understood "as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of

labor contracts." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985). As such, § 301 pre-empts state court suits "alleging a violation of a provision of a labor contract." Id. at 210.

The United States Supreme Court in Allis-Chalmers held that the pre-emptive effect of § 301 extends beyond suits that literally allege contract violations to include suits raising "[q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." Id. at 210–11; see, e.g., Shanefelter v. U.S. Steel Corp., 784 F. Supp. 2d 550, 559 (W.D. Pa. 2011) (holding that the plaintiff's state law breach of contract claims against her employer were preempted by § 301 because they were "founded directly on rights created by [the parties' collective bargaining] and/or substantially depend on its analysis").  But "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." Allis-Chalmers, 471 U.S. 202 at 211; see also id. at 219 (characterizing the holding as "narrow"). Rather, only state-law rights "that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." Id. at 213. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement between parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." Id. at 219 (citation omitted). Suits that meet Allis-Chalmers' "substantially dependent" standard are completely preempted by § 301 such that the claim may be heard in federal court even if a reference to § 301 does not appear on the face of the complaint. Caterpillar v. Williams, 482 U.S. 386, 394 (1987).

The Allis-Chalmers Court considered § 301's pre-emptive effect on a state-law tort claim alleging an employer's bad-faith failure to make disability payments owed under a collective-bargaining agreement. Id. at 204–06. Because the state-law rights established by this tort derived from the rights provided in the contract, the court concluded that any tort liability was based on

6

"questions of contract interpretation." Id. at 217–18. Therefore, the claim was pre-empted by § 301. Id. at 219.

In N.J. Carpenters, the United States Court of Appeals for the Third Circuit addressed the application of Allis-Chalmers to facts similar to those alleged here. There, carpenters hired to work on a New Jersey public works project sued their employer in state court for not paying fringe benefits allegedly required by the New Jersey Prevailing Wage Act. N.J. Carpenters, 760 F.3d at 301. The defendant removed the case to federal court, arguing that the plaintiffs' claim was completely preempted by § 301 as it required interpretation of the parties' collective bargaining agreement. The Third Circuit disagreed, concluding that rights under the New Jersey Prevailing Wage Act "exist independently of any CBA." Id. at 306. The court reasoned that "[p]roving a [New Jersey Prevailing Wage Act] violation does not require any reference to or analysis of any CBA"; rather, it required only comparing the wages required by the Act to those actually paid. Id. The fact that the amount owed to the workers under the New Jersey Prevailing wage Act may have been the same as that owed under the CBA did not alter this conclusion. Id.

    **C.**    **Application to Plaintiff's Claims**

This case is squarely governed by N.J. Carpenters. The court in N.J. Carpenters recognized that the New Jersey Prevailing Wage Act at issue in that case is "substantially similar" to the Pennsylvania Prevailing Wage Act at issue here. N.J. Carpenters, 760 F.3d at 305 n.4. Here, Plaintiff's claim for wages owed under the Pennsylvania Prevailing Wage Act is not substantially dependent on an analysis of the terms of the CBA because it is based on: (1) the prevailing wage rates and classifications approved by the Secretary, and (2) the custom and usage in the industry regarding those classifications. Because neither factor is substantially based on the CBA, Plaintiff's claim is not completely preempted by the Labor Management Relations Act.

More specifically, the Pennsylvania Secretary of Labor determines prevailing wage rates for

public projects, and although the Secretary may consider the terms of collective bargaining agreements in reaching this determination, it is the Secretary's authority alone to approve the rates. See 43 Pa. Cons. Stat. § 165-5; 34 Pa. Code § 9.105(a); cf. Lewis v. Hallen Constr. Co., 2019 WL 1974917, at *3 (N.Y. Sup. Ct. 2019) ("Although collective bargaining agreements may be relied upon by the [New York City] Comptroller in determining trade classifications, the authority to do so remains solely with the Comptroller. Accordingly, whether defendants breached the utility contracts by not paying plaintiffs the prevailing wages due to them being misclassified does not require interpretation of the collective bargaining agreements."), affirmed, 193 A.D.3d 511 (N.Y. App. Div. 2021). Therefore, a court deciding a prevailing wage claim must look to the rates set pursuant to this authority, not those contained in a collective bargaining agreement. Cf. N.J. Carpenters, 760 F.3d at 306.

Defendant responds that determining the correct classification for Plaintiff's members requires enforcement or interpretation of the CBA because the CBA outlines the work duties of each job classification. But while a CBA may be one factor among many that the Secretary may consider in setting prevailing wages before a bid is undertaken, Plaintiff's claim does not seek the wages established by the CBA, only the wages to which its members are allegedly entitled under the Prevailing Wage Act. And "custom and usage in the building and construction industry" is the standard applicable for determining which tasks fall under which classifications, a determination that can be made without recourse to the terms of a collective bargaining agreement. See, e.g., R.L. Insulation, Co., 923 A.2d at 555–56. To the extent the provisions of the CBA may parallel the requirements of state law, N.J. Carpenters holds that this is insufficient to create federal jurisdiction. 760 F.3d at 306.

Defendant also attempts to distinguish N.J. Carpenters by noting that the plaintiffs there did not allege that they were paid according to the wrong job classification. This distinction is not

material. Here, Plaintiff claims that its members were paid according to the wrong job classification under state law, not that they were paid according to the wrong classifications under the CBA. The Prevailing Wage Act establishes prevailing wage rates by job classification, which are independent (although likely reflective) of the classifications described in collective bargaining agreements. See 43 Pa. Cons. Stat. § 165-7 ("The secretary shall . . . determine the general prevailing minimum wage rates . . . for each craft or classification . . . ."); 34 Pa. Code § 9.105(a) (providing that "[f]or the purpose of" determining prevailing wage rates for each classification, "the Secretary may ascertain and consider the wage rates . . . established by collective bargaining agreements"). Therefore, as in N.J. Carpenters, the claim here "does not turn on the interpretation of any CBA." 760 F.3d at 306.

Because Plaintiff's claim is not substantially dependent on analysis of the terms of a collective bargaining agreement, it is not completely preempted by § 301 of the Labor Management Relations Act. In the absence of complete preemption, there is no basis for federal subject-matter jurisdiction. I will therefore remand the case to the Court of Common Pleas of Philadelphia County and deny Defendant's motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand will be granted, and Defendant's Motion to Dismiss will be denied as moot.

An appropriate order follows.